# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **M.H.-1**

**No. 17-0585** (Randolph County 17-JA-019)

**FILED**

**November 22, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother M.H.-2, by counsel David C. Fuellhart III, appeals the Circuit Court of Randolph County's May 16, 2017, order terminating her parental rights to M.H.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Heather M. Weese, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for an improvement period and in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2017, the DHHR filed an abuse and neglect petition against petitioner alleging that there were aggravated circumstances because her parental rights to two other children had been previously involuntarily terminated. According to the petition, petitioner's parental rights were previously terminated because she knowingly allowed her ex-boyfriend to severely physically abuse the children. In the previous proceedings, petitioner testified that she observed the ex-boyfriend hold her son's head underwater until the child passed out and "throw" the child when he was angry. The petition also alleged that, when M.H.-1 was born, petitioner represented to the hospital that she was acting as a surrogate for a couple that had a history of abuse and neglect. Following the child's birth, petitioner admitted to hospital staff that her current boyfriend, B.S., was the father of the child and not the proposed adoptive father, as she

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because the child and petitioner share the same initials, we will refer to the child as M.H.-1 and the mother as M.H.-2 throughout this memorandum decision.

previously stated. B.S. was initially named as the "unknown father" in the petition due to petitioner's different assertions regarding the child's paternity. The petition further alleged that B.S. was incarcerated following a probation revocation for an unrelated misdemeanor conviction due to his substance abuse issues and failed drug screens. According to the petition, B.S. was also in arrears in his child support payments for another child not at issue in this case. Later, in March of 2017, the DHHR filed an amended petition alleging that B.S., as confirmed by genetic testing, was the child's biological father. The petition also alleged that he abused the children due to his drug abuse and that he was impaired during his interview with the DHHR's caseworker. The petition further alleged that petitioner and the father engaged in domestic violence.

In April of 2017, the circuit court held an adjudicatory hearing at which petitioner stipulated that she had a history of prior involuntary terminations of her parental rights and that she failed to protect M.H.-1 by agreeing to give the child to a couple that had a history of abuse and neglect. The circuit court adjudicated petitioner as an abusing parent. Petitioner then filed a motion for a post-adjudicatory improvement period. On April 28, 2017, the DHHR moved to terminate petitioner's parental rights.

In May of 2017, the circuit court held a dispositional hearing upon the DHHR's motion to terminate petitioner's parental rights. At the hearing, petitioner minimized the stipulations that she made at the adjudicatory hearing and denied a history of abuse regarding her two older children involved in the previous involuntary terminations. She stated that she should have never been adjudicated as an abusive parent and that "she would do anything to make sure that the State would not come in and take" M.H.-1. The DHHR caseworker testified that petitioner's behaviors "allow her to be abused," jeopardized her ability to protect herself and the child, and that her psychological evaluation indicated a low prognosis for change. The caseworker also testified that M.H.-1's father, B.S., abuses drugs. The circuit court denied petitioner's motion for an improvement period and found that she failed to prove by clear and convincing evidence that she would likely fully participate in the same. The circuit court also found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future, noting that she "was presently unwilling or unable to provide adequately for the [child's] needs." On May 16, 2017, the circuit court entered an order denying petitioner's motion for a post-adjudicatory improvement and terminating her parental rights to the child.[2] This appeal followed.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a

---

[2]Petitioner's parental rights to M.H.-1 were terminated below. According to the guardian, M.H.-1's biological father, B.S.'s, rights were also terminated below. M.H.-1 was placed in a foster home and the permanency plan is adoption into that home.

reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period. In support of her argument, petitioner contends that she met her burden of demonstrating her ability to fully participate in an improvement period by "voluntarily . . . participating in parenting classes and life skills classes." We have held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period . . . .'" *In re: Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004). Furthermore, we have oft noted that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) (stating that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) (holding that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements").

Here, it is clear from the record that petitioner failed to demonstrate her ability to fully participate in an improvement period. She minimized her admission that she failed to protect her child, denied the history of abuse that led to her previous involuntary terminations, and blamed the circuit court and the legal system for removing her child. The circuit court was presented with evidence that petitioner's psychological evaluation indicated a low prognosis for improvement in her ability to parent.

> Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.,* 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *Charity H.,* 215 W.Va. at 217, 599 S.E.2d at 640). It is clear that petitioner failed to demonstrate that she is likely to fully participate in a post-adjudicatory improvement period. As such, the circuit court did not err in denying petitioner's motion. Accordingly, we find no error below.

Finally, petitioner argues that the circuit court erred in terminating her parental rights to the child because there were alternate dispositions available that she claims were more appropriate. She also argues that the circuit court should have placed the child in a guardianship under West Virginia Code § 49-4-604(b)(5). We disagree. West Virginia Code § 49-4-604(b)(6)

directs circuit courts to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c)(3) provides that "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

In this case, the circuit court specifically found that petitioner "was presently unwilling or unable to provide adequately for the [child's] needs." Petitioner's previous involuntary terminations were based on her failure to protect her children from abuse. The circuit court was presented with evidence that she also failed to protect M.H.-1, denied the history of abuse that led to her previous involuntary terminations, and blamed the circuit court and the legal system for removing the child. Given petitioner's lack of improvement during these proceedings, we find no error in the circuit court's termination order. The circuit court properly found that petitioner was not reasonably likely to substantially correct the conditions of abuse and neglect in the near future, and it is clear from the record that the child's welfare necessitated the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 16, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: November 22, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker